IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GENERAL NUTRITION INVESTMENT COMPANY, GNC HOLDINGS, INC., | ) ) ) ) ) ) ) ) ) ) ) ) | 2:20-cv-00022-RJC |
| Plaintiffs, | | |
| | | Judge Robert J. Colville |
| vs. | | |
| INGROUNDS PRO, INC., | | |
| Defendant, | | |

## OPINION

Robert J. Colville, United States District Court Judge

Before the Court is the Motion for Default Judgment and Permanent Injunctive Relief (ECF No. 14) file by Plaintiffs General Nutrition Investment Company and GNC Holdings, Inc. (collectively, "GNC"). Defendant Ingrounds Pro, Inc. ("Ingrounds") has not filed a responsive pleading and has not appeared in this matter through counsel. For the reasons set forth below, GNC has carried its burden with respect to the entry of default judgment and a grant of permanent injunctive relief, and the Court shall enter an appropriate Order of Court granting GNC's Motion for Default Judgment and Permanent Injunctive Relief.

**I.     Factual Background & Procedural History**

GNC sets forth claims against Ingrounds for trademark infringement and unfair competition under the Lanham Act, common law trademark infringement and unfair competition, and violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. GNC's claims stem from allegations that Ingrounds has used GNC's trademarks in violation of the law by selling non-genuine GNC-branded products via Amazon.

1

GNC's Complaint (ECF No. 1) was filed on January 7, 2020, and Ingrounds was served with the Complaint on January 23, 2020. ECF No. 10. To date, Ingrounds has not filed a responsive pleading or otherwise appeared in this matter through counsel. The Clerk of Courts entered default against Ingrounds on February 18, 2020. ECF No. 13. Thereafter, GNC moved for default judgment, prompting this Court to schedule a hearing. February 26, 2020 Order of Ct., ECF No. 16. Ingrounds was served with notice of the hearing on March 2, 2020. ECF No.17. On March 12, 2020, this Court entered an Order which: 1) cancelled the hearing scheduled for March 30, 2020; 2) allowed the parties to instead submit additional briefing and any evidence by way of affidavits, transcripts, and/or other text exhibits; and 3) permitted the parties to object to the Court's decision to proceed in this manner by March 17, 2020. March 12, 2020 Order of Ct., ECF No. 18. Ingrounds was served with the March 12, 2020 Order on March 12, 2020. ECF No. 19. No party objected to the procedure set forth in the Court's March 12, 2020 Order. GNC submitted the Declarations of David Sullivan (ECF No. 21), Robert Grise (ECF No. 22), and Meredith Hood (ECF No. 23) on March 26, 2020. Ingrounds has submitted no evidence or briefing in opposition to GNC's Motion for Default Judgment and Permanent Injunctive Relief.

**II.     Legal Standard**

Upon application of the party seeking default judgment, a district court may enter default judgment after the clerk of court has entered the opposing party's default. Fed. R. Civ. P. 55(b)(2). "Upon entry of default against a defendant, the 'well-pleaded' facts alleged in the complaint (except those relating to damages) must be taken as true." *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 439 (E.D. Pa. 2006) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.1990)). In considering a motion for default judgment, a district court first must be satisfied that it "has both subject matter jurisdiction over the action and personal jurisdiction over the defendant against

2

whom the default judgment is sought." *Mercedes-Benz Fin. Servs. USA LLC v. Synergistiks, Inc.*, No. 3:18-cv-184, 2019 WL 481753, at *2 (W.D. Pa. Feb. 7, 2019) (quoting *Harris v. Dollar General Corp.*, Civil Action No. 16-416, 2016 WL 2733227, at *1 (W.D. Pa. May 11, 2016)). The court must then determine whether the well-pled facts in the complaint state a cause of action against the defendant. *Mercedes-Benz*, 2019 WL 481753, at *2. In determining whether default judgment should be granted, the court must also consider the factors set forth in the case of *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000).

### III. Discussion

#### A. Subject Matter Jurisdiction

The Court has original subject matter jurisdiction over GNC's federal trademark law claims pursuant to 28 U.S.C. § 1331, and has supplemental jurisdiction over GNC's state law claims pursuant to 28 U.S.C. § 1367.

#### B. Personal Jurisdiction

Under the Federal Rules of Civil Procedure, district courts are authorized to exercise personal jurisdiction over non-residents to the extent permissible under the law of the state in which the district court is located. Fed. R. Civ. P. 4(e); *North Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990). In exercising personal jurisdiction, the court must first ascertain whether jurisdiction exists under the forum state's long-arm jurisdiction statute and then determine whether the exercise of jurisdiction comports with the due process clause of the Fourteenth Amendment to the Constitution. *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 489-90 (3d Cir.1985). This inquiry has been collapsed in Pennsylvania, as the Pennsylvania long-arm statute provides that: "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons ... to the fullest extent allowed under the Constitution of the United States and may

be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b); *Van Buskirk*, 760 F.2d at 490. The reach of the Pennsylvania long-arm statute is thus "coextensive" with the due process clause. *North Penn Gas*, 897 F.2d at 690. The due process clause permits the court to assert personal jurisdictional over a nonresident defendant who has "certain minimum contacts with [the forum] such that the maintenance of [a] suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).

GNC asserts that this Court has specific personal jurisdiction over Ingrounds in this matter. Specific jurisdiction is appropriate only if the plaintiff's cause of action arises out of a defendant's forum-related activities, "such that the defendant 'should reasonably expect being haled into court'" in that forum. *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Inc.,* 75 F.3d 147, 151 (3d Cir. 1996) (quoting *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). The Third Circuit has explained the three-part analysis for specific jurisdiction. "First, the defendant must have 'purposefully directed [its] activities' at the forum. Second, the litigation must 'arise out of or relate to' at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise 'comport[s] with fair play and substantial justice.'" *O'Connor v. Sandy Lane Hotel,* 496 F.3d 312, 317 (3d Cir. 2007) (internal citations omitted). To find that a plaintiff's claims "arise out of or relate to" the defendant's contacts with the forum state, the Third Circuit requires "a closer and more direct causal connection than that provided by the but-for test." *Id.* However, the required causal connection is looser than the tort concept of proximate causation. *Id.* (citing *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 99-100 (3d. Cir.2004). The appropriate analysis is fact-intensive, focusing on the "reciprocity principle upon which specific jurisdiction

4

rests" -- whether the defendant received the benefits and protections of a state's laws to the extent that it should, as a quid pro quo, submit to the burden of litigation in the state. *Id.* at 323.

In the present case, Ingrounds has utilized Amazon.com and its vast infrastructure to sell and ship non-genuine GNC products nationwide, and has further used Amazon to sell and ship such products to this Commonwealth. Compl. ¶¶ 4, 6, 77, 90, 94; Sullivan Decl. ¶¶ 15-16. Accordingly, Ingrounds has purposefully directed activities at this Commonwealth. *See Telebrands Corp. v. Mopnado*, No. CV21407969JLLJAD, 2016 WL 368166, at *7 (D.N.J. Jan. 12, 2016), report and recommendation adopted, No. CV147969JLLJAD, 2016 WL 355072 (D.N.J. Jan. 28, 2016) (holding that a defendant directed activities to New Jersey, and explaining "Defendant has intentionally created a business model whereby it now sells the allegedly infringing Mopnado product exclusively through its storefront on Amazon.com, thereby taking advantage of Amazon's national presence, and has sold at least 626 units of that product to New Jersey residents pursuant to that arrangement."). Further, this case arises out of Ingrounds' purposefully direct activities because GNC's claims clearly arise from Ingrounds' sale of trademark infringing, non-genuine GNC products to citizens of this Commonwealth, as well as others, through Amazon.

Finally, the Court's exercise of personal jurisdiction over Ingrounds comports with fair play and substantial justice. "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 324 (3d Cir. 2007) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The Court has found that minimum contacts are present in this matter, and Ingrounds has presented no argument as to why jurisdiction in this forum is unfair or unjust.

5

Accordingly, this Court's exercise of jurisdiction over Ingrounds comports with fair play or substantial justice.

For the reasons discussed above, this Court has specific personal jurisdiction over Ingrounds.

### C. GNC's Complaint

The Court must also determine whether the well-pled facts in GNC's Complaint state a cause of action against Ingrounds. *Mercedes-Benz Fin. Servs. USA LLC v. Synergistiks, Inc.*, No. 3:18-CV-184, 2019 WL 481753, at *2 (W.D. Pa. Feb. 7, 2019). To establish a claim for trademark infringement or unfair competition, a plaintiff must show that: "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark is likely to create confusion concerning the origin of the goods or services." *Freedom Card, Inc. v. JPMorgan Chase & Co.*, 432 F.3d 463, 470 (3d Cir. 2005) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 202 (3d Cir.1999)).

"To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). Because GNC has registered the trademarks at issue, GNC has established that the marks are valid, legally protectable, and owned by GNC. *See* Compl. ¶ 11.

GNC argues that Ingrounds' use of GNC's trademarks is likely to cause customer confusion because the non-genuine GNC products at issue do not meet GNC's quality control standards. In *Warner-Lambert Co. v. Northside Dev. Corp.*, 86 F.3d 3 (2d Cir. 1996), the United States Court of Appeals for the Second Circuit explained that:

> Distribution of a product that does not meet the trademark holder's quality control standards may result in the devaluation of the mark by tarnishing its image. If so, the non-conforming product is deemed for Lanham Act purposes not to be the genuine product of the holder, and its distribution constitutes trademark infringement.

*Warner-Lambert*, 86 F.3d 3 at 6 (citing *Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 78 (2d Cir.1994); *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir.1986)).

The *Warner-Lambert* court went on to explain that:

> However, to be entitled to relief, a trademark holder is not required to adopt the most stringent quality control procedures available. The trademark holder must demonstrate only that: (i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark.

*Id*.

GNC and its authorized sellers utilize legitimate, substantial, and nonpretextual quality control standards for GNC products. *See* Compl. ¶¶ 48-70; Sullivan Decl. ¶¶ 5-13. GNC's authorized sellers are required to regularly inspect their inventory, and are not permitted to offer for sale products found to be damaged or expired. Compl. ¶¶ 63-64; Sullivan Decl. ¶ 9. Ingrounds does not comply with these standards. Compl. at ¶¶ 70; 91; Hood Decl. Ex. A 12. Ingrounds' non-conforming sale of non-genuine GNC products diminishes the value of GNC's trademarks because it increases the risk that a customer will receive poor quality products that are not subject to GNC's rigorous quality controls. Sullivan Decl. ¶¶ 3-4; Hood Decl. Ex. A 12-13. This, in turn, increases the likelihood that a customer will leave a negative review for a GNC product on Amazon that can be viewed by other customers. Compl. ¶¶ 39-47; Sullivan Decl. ¶ 4; Hood Decl. Ex. A 12-13. GNC and its authorized sellers utilize legitimate, substantial, and nonpretextual quality control standards that are not adhered to by Ingrounds. Ingrounds' failure to adhere to these quality control standards diminishes the value of GNC's trademarks. Accordingly, Ingrounds'

7

unauthorized sale of non-genuine GNC products is likely to create confusion concerning the origin of the GNC products at issue

For the reasons discussed above, the trademarks at issue are valid, legally protectable, and owned by GNC, and Ingrounds' unauthorized use is likely to create confusion concerning the origin of the GNC products at issue. Accordingly, GNC's Complaint states a cause of action against Ingrounds.

### D. The *Chamberlain* Factors

In determining whether default judgment should be granted, the Court must also consider: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). "When a defendant is in default and has not opposed the motion for default judgment, however, trial courts in this circuit give somewhat less deference to *Chamberlain*." *Broad. Music, Inc. v. George Moore Enterprises, Inc.*, 184 F. Supp. 3d 166, 170 (W.D. Pa. 2016) (quoting *Smith Transp., Inc. v. Truck & Bus Wash, Inc.*, No. 3:06–CV–160, 2007 WL 320826, at *1 (W.D.Pa. Jan. 30, 2007)).

As discussed above, Ingrounds is in default and does not oppose GNC's Motion for Default Judgment. GNC will suffer prejudice if default judgment is denied because Ingrounds' non-conforming sales will continue diminish the value of GNC's trademarks if this Court were to deny GNC's Motion. Further, Ingrounds does not appear to have a litigable defense because Ingrounds has not appeared in this case and has not asserted any defense to the claims asserted against it. Finally, Ingrounds' failure to participate in this action creates a presumption of culpability. *See Spring Valley Produce, Inc. v. Stea Bros.*, No. CIV.A. 15-193, 2015 WL 2365573, at *3 (E.D. Pa. May 18, 2015) ("A defendant's failure to participate in a case creates a presumption of

culpability."). Accordingly, each of the *Chamberlain* factors supports the entry of default judgment against Ingrounds in this matter.

For the reasons discussed above, GNC's Motion for Default Judgment is granted, and default judgment shall be entered against Ingrounds.

### E. Injunctive Relief

"In determining whether to grant a permanent injunction, a court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest." *Broad. Music, Inc. v. George Moore Enterprises, Inc.*, 184 F. Supp. 3d 166, 171 (W.D. Pa. 2016) (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir.2001)).

As discussed above, GNC's Complaint sets forth valid claims against Ingrounds, and Ingrounds has not asserted any defense to those claims. Accordingly, GNC has shown actual success on the merits.

Further, GNC has suffered significant harm and will continue to be irreparably injured if an injunction is not granted. "The essence of the irreparable harm caused by trademark infringement is the aggrieved party's loss of control over its business reputation and goodwill." *AAMCO Transmissions, Inc. v. Dunlap*, No. CIV.A. 11-4009, 2015 WL 4476423, at *3 (E.D. Pa. July 22, 2015). Ingrounds' continued sale of non-genuine GNC products through Amazon has resulted in negative reviews of GNC products on Amazon from customers who have purchased infringing, poor-quality products from Ingrounds. *See* Compl. ¶ 39; Sullivan Decl. ¶¶ 3-4; Hood Decl. Ex. A 12-13. These reviews are damaging to the GNC brand and affect consumer perception of GNC's quality and reputation. Compl. ¶ 39. Accordingly, GNC has lost control over its

business reputation and goodwill as a result of Ingrounds' infringement and, given Ingrounds' failure to take any action thus far to remedy its infringement, GNC will continue to suffer irreparable harm if an injunction is not granted.

With regard to whether the granting of the proposed injunction would result in even greater harm to Ingrounds, the Court notes that the only hardships imposed by the proposed injunction to Ingrounds are that Ingrounds will no longer be permitted to sell non-genuine GNC products and that it will be required to comply with the Lanham Act. These are not legally cognizable harms. *See AAMCO*, 2015 WL 4476423, at *2 ("a permanent injunction would merely prevent [defendant] from engaging in conduct to which he has no legal right."). Accordingly, injunctive relief will not result in proportionally greater harm to Ingrounds.

Finally, an injunction is in the public interest because enforcement of federal trademark laws and protection of the rights and responsibilities set forth therein are definitionally in the public interest. *See Broad. Music, Inc. v. George Moore Enterprises, Inc.*, 184 F. Supp. 3d 166, 171 (W.D. Pa. 2016) (citing *Broad. Music, Inc. v. Spring Mount Area Bavarian Resort, Ltd.*, 555 F.Supp.2d 537, 544-45 (E.D.Pa.2008)). "[A]n injunction which enforces federal copyright laws, and protects the rights and responsibilities defined by them, is by definition in the public interest.").

### IV. Conclusion

For the reasons discussed above, GNC has established that it is entitled to the entry of default judgment in its favor. GNC has further established that a permanent injunction is appropriate in this matter. Accordingly, the Court will grant GNC's Motion for Default Judgment and Permanent Injunctive Relief (ECF No. 14). An appropriate Order of Court follows.

BY THE COURT:

DATED: April 7, 2020

s/*Robert J. Colville*
Robert J. Colville
United States District Court Judge

cc/ecf: All counsel of record